AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

## UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

JUN 17 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *Information Associated with Snapchat Account* | ) | Case No.   24-mj-423-SH |
| *"Ryry9378" that is Stored at a Premises Controlled by* | ) | |
| *Snap, Inc.* | ) | **FILED UNDER SEAL** |
| | ) | |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).
located in the __Central__ District of __California__ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | **Coercion and Enticement of a Minor** |
| 18 U.S.C. §§ 2251(d)(1)(A) & 2251(e) | **Advertising to Purchase and Receive Child Pornography** |
| 18 U.S.C. §§ 2252(a)(2) & (b)(1) | **Receipt of Child Pornography** |
| 18 U.S.C. §§ 2252(a)(4)(B) & (b)(2) | **Possession of Child Pornography** |

The application is based on these facts:
**See Affidavit of Dustin L. Carder, attached hereto**.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*
Dustin L. Carder, HSI Special Agent
*Printed name and title*

Subscribed and sworn to by phone.

Date:  6/17/24

_____
*Judge's signature*

City and state:  Tulsa, Oklahoma

Susan E. Huntsman, U.S. Magistrate Judge
*Printed name and title*

### Affidavit in Support of an Application for a Search Warrant

I, Dustin L. Carder, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for information associated with the Snapchat account **"Ryry9378"** that is stored at a premises owned, maintained, controlled, or operated by Snap, Inc., an electronic communications service and/or remote computing service provider headquartered at 2772 Donald Douglas Loop North in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the Snapchat account, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been employed as a Special Agent ("SA") with Homeland Security Investigations ("HSI") since December 2018. I am currently assigned to the Office of the Resident Agent in Charge in Tulsa, Oklahoma, and am currently assigned to investigate crimes involving child exploitation. While employed by HSI, I have investigated federal criminal violations related to child exploitation and child pornography. I have gained experience through training at the Federal Law Enforcement Training Center's ("FLETC") twelve-week Criminal Investigator Training Program ("CITP") and the sixteen-week Homeland Security Investigations Special Agent Training ("HSISAT") program, and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have received focused child exploitation training covering topics such as: interview techniques, live streaming investigations, undercover investigations, capturing digital evidence, transnational child sex offenders, correlations between child pornography and hands-on offenses, psychological and behavioral characteristics of sex offenders, and mobile messaging platforms utilized by these types of offenders. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2422.

4.  I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

5.  Based on my training, research, experience, and the facts as set forth in this affidavit, there is probable cause to believe the identified Snapchat account contains evidence, instrumentalities, contraband, and/or fruits of violations of 18 U.S.C. § 2422(b) (Coercion or Enticement of a Minor), 18 U.S.C. §§ 2251(d)(1)(A) and 2251(e) (Advertising to Purchase and Receive Child Pornography), Title 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt of Child Pornography), and Title 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of Child Pornography) by Ryan LLEWELLYN.

## Jurisdiction

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States .

. . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

7. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

### Snapchat Background

8. Snapchat is a free mobile application made by Snap, Inc. and is available for download through the Apple App Store and Google Play Store. The Snapchat application is used to share information through photos, videos, and chat messages.

9. To use Snapchat, a user must download the mobile application to their mobile device and sign up using their name and date of birth. The user then selects a username and password. Snapchat then requires an email address or phone number to create an account. A user can also create a vanity name.

10. "Snaps" are photos or videos taken using the camera on an individual's mobile device through the Snapchat application, and may be shared directly with the user's friends, or in a story (explained further below), or chat.

4

11. A Snapchat user can add Snaps to their "story." A story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their story can be viewed by all users, their friends, or a custom audience. A user can also submit their Snaps to Snapchat's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all users in Search and Snap Map.

12. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snapchat and may remain in Memories until deleted by the user. Users may encrypt their content in Memories in which case the content is not accessible to Snap, Inc. and cannot be decrypted by Snap, Inc.

13. A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat application using the Chat feature. Snapchat's servers are designed to automatically delete one-to-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's chat settings.

14. If a Snapchat user has device-level location services turned on and has opted into location services on the Snapchat application, Snap, Inc. will collect location data, which will vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the application settings.

5

15. A Snapchat username is a unique identifier associated with a specific Snapchat account, and it cannot be changed by the user.

16. Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat application. The basic subscriber information entered by a user in creating an account is maintained as long as the user has not edited the information or removed the information from the account.

17. In addition to the information provided by a user to register an account, Snap, Inc. may retain the account creation date and IP address. Further Snap, Inc. also stores a user's Timestamp and IP address of account logins and logouts.

18. For each Snapchat user, Snap, Inc. collects and retains the content and other records described above.

19. Snap, Inc. retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by the sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content. Snap, Inc. may be able to retrieve content of some Snaps.

20. Videos and photos sent and received as Snaps are accessible to users for only a short period of time. If a screenshot is taken of an image by the recipient, the sender is notified. Videos cannot be saved by the recipient. Because of the common belief by Snapchat users that videos and photos cannot be retained by recipients, Snapchat is often used to facilitate and document criminal acts.

21. As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

22. The stored communications and files connected to Snapchat account may provide direct evidence of the offenses under investigation.

23. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Snap, Inc. can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and chat logs, documents, and photos and videos (and the data associated with the foregoing, such as location, date, and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. This geographic and timeline information may tend to either inculpate or exculpate the account owner by allowing investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crime under investigation.

7

24. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25. Other information connected to the use of Snapchat may lead to the discovery of additional evidence, the identification of co-conspirators, witnesses, and instrumentalities of the crime(s) under investigation.

26. Therefore, Snap, Inc.'s servers are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat to facilitate and communicate about the crime under investigation.

27. I previously requested that Snap, Inc. preserve any information for the account listed in Attachment A.

### Probable Cause

28. On February 6, 2024, I received a phone call from "J.D.," a concerned citizen, who had recently discovered inappropriate communications on Snapchat between her 15-year-old daughter and multiple other individuals. J.D. also advised

me that her daughter, the minor victim ("MV"), had received money for her explicit content from those individuals and received payment via Cash App[1].

29. On February 8, 2024, SA Erin Staniech and I met with J.D., her husband, and MV in their home in Broken Arrow, Oklahoma. J.D. provided MV's phone to agents for forensic examination. J.D. signed a Consent to Search Form for the phone and MV's Snapchat account. The phone is an Apple iPhone 14 Pro Max, serial number 37QT2WVCC4.

30. Agents briefly spoke with MV with her parents present. MV provided the phone number of one of the suspects, known as "Ryl," as (918) 313-2747. MV stated that Ryl deletes his Snapchat accounts as soon as receiving content and creates another one. MV provided the Cash App handles for herself (redacted), and three suspects as "$jbomb68," "$kylecox20," and "RYL." MV provided one of the suspect's Snapchat usernames as "treywey21." The investigation thus far has revealed that only "RYL" is located within the Northern District of Oklahoma. The other targets are located in other states.

31. On February 13, 2024, MV was interviewed at the Child Abuse Network in Tulsa, Oklahoma, by forensic interviewer Karla Cordero. The interview was audio and video recorded. The following is a summary of some of the statements made:

     i.     MV is 15 years old and in the 9th grade.

---

[1] Cash App is a peer-to-peer payment app that lets individuals quickly send, receive and invest money. Block, Inc., formerly Square, Inc., launched the app, initially named Square Cash, in 2013 to compete with mobile payment apps like Venmo and PayPal.

ii.   MV lives with her mother and father.

iii.   MV was there to talk about what happened on Snapchat.

iv.   MV was selling her pictures and videos to men on Snapchat.

v.   MV stated their names were "Trey," "Jack Davenport" and "Ry."

vi.   MV provided her Snapchat username.

vii.   All three individuals randomly added her on Snapchat, and as far as she knows, do not know each other.

viii.   They asked her if she wanted money for pictures; she said yes.

ix.   Ry made multiple accounts and would delete his account after receiving content, and would then add her back onto a new account.

x.   They would ask for pictures of her breasts and butt.

xi.   The pictures to Ry had her face in it and breasts exposed.

xii.   Everything started with Ry in approximately January-February 2023.

xiii.   Ry would send her $50-$100 via Cash App for 5-10 pictures.

xiv.   One of them also used Apple Pay to send her money. MV thought it was possibly Ry because she had his phone number.

xv.   MV stated she never talked to any of them on the phone.

xvi.   She would communicate with them on Snapchat if she needed money and would ask if they want pictures.

xvii.   She told all of them that she was 15; she was actually 14 when she told two of them she was 15.

xviii.   Ry told MV that he lives in Tulsa.

xix.   Ry offered her $500 to meet up with him and perform oral sex on him, which she declined.

xx.   MV bought marijuana and games with the money she was sent.

xxi.   MV got in trouble at school for vaping, mom went through her phone and found the messages.

32. On February 13, 2024, prior to the forensic interview, I manually reviewed

MV's phone and discovered nude images and videos of what appear to be MV. Her

10

vagina was exposed in multiple files. Messages with Ry were not located; however, messages with another user mentioned by MV were located. These files contained multiple sexually explicit images and videos of MV in which her vagina is exposed.

33. On February 16, 2024, HSI Tulsa electronically served AT&T with an administrative Department of Homeland Security ("DHS") summons for subscriber information for phone number (918) 313-2747 from February 1, 2023, through the present. This phone number was provided by MV as belonging to "Ry L," one of the targets who purchased explicit material from her.

34. AT&T responded the same day and provided the requested information. The listed subscriber is Ryan LLEWELLYN with an address of 1139 South Florence Avenue, Tulsa, Oklahoma 74104. The account was activated on April 3, 2015, and is still active.

35. I then queried "Ryan Llewellyn" in Tulsa on Accurint[2]. Accurint returned a Ryan Thomas LLEWELLYN associated with phone number (918) 313-2747. LLEWELLYN's date of birth is xx/xx/1984, making him 39 years old. The most recent address associated with LLEWELLYN is 6306 South 107th East Avenue, Apartment 1, Tulsa, Oklahoma 74133. The address of 1139 South Florence Ave in Tulsa is listed in Accurint as a previous address.

---

[2] Accurint is online investigative software, similar to CLEAR, that provides law enforcement with a direct connection to public records to help verify identities, assets, and connections.

36. After reviewing MV's Cash App activity on her device, I was able to determine "Ry L's" Cash App handle was $ry91888. On or about February 23, 2024, HSI Tulsa electronically served Block, Inc., owner and operator of Cash App, with an administrative DHS summons for subscriber information associated with Cash App handle $ry91888, and the Cash App handle associated with MV. Information requested in the summons included all records including customer name, identifiers, telephone number(s), IP addresses, registration forms, payment and transactional records, email addresses, deposit records, customer correspondence, and any other data that might assist in identifying the account holder or account activity, emails/phone calls or correspondence with the account holder. It was further requested that Block, Inc. provide any and all linked information on other account customers that are conducting transactions with the potential account holder, accounts that are linked and/or sharing digital fingerprints, device IDs or other data that indicate the account holder. The date range requested was February 1, 2023, through the present.

37. On or about February 27, 2024, Block, Inc. responded to the summons and provided the requested information. Pertaining to the $ry91888 account, believed to be associated with LLEWELLYN, the name, date of birth, and social security number fields were blank. According to the provided documents, this means that the account has not met internal thresholds for identity verification. No address was listed either. Display names for the account are "Ry Llll," and "Ry L." These are the

names created by a subscriber for peers to recognize and will show up on transaction records.

38. The below "alias history" for the account refers to any additional $cashtags, phone numbers, email addresses, or aliases that may be connected and/or previously used by the account holder:

| Date | Alias | Source | Status |
|---|---|---|---|
| 2023-06-24 18:29:12 UTC | ry91888 | CASHTAG | Removed |
| 2023-06-24 18:29:12 UTC | bluebyyou714@gmail.com | EMAIL | Removed |
| 2023-06-24 16:22:37 UTC | ry91888 | CASHTAG | Added |
| 2023-06-24 16:22:37 UTC | ryryllll | CASHTAG | Removed |
| 2023-06-24 16:22:18 UTC | 9183132747 | SMS | Removed |
| 2023-06-24 16:22:11 UTC | bluebyyou714@gmail.com | EMAIL | Added |
| 2023-05-06 00:05:13 UTC | ryryllll | CASHTAG | Added |
| 2023-05-06 00:04:09 UTC | 9183132747 | SMS | Added |
| 2023-04-29 14:51:06 UTC | C_se22paype | CUSTOMER_TOKEN | Added |

13

39. As previously described herein, phone number (918) 313-2747, registered to LLEWELLYN, was used by this Cash App account as an alias.

40. There are multiple successful payment transactions from this account listed below:

| Date | Status | Total | Subject | Sender | Sndr. Source | Action | Recipient |
|---|---|---|---|---|---|---|---|
| 2023-08-16 21:40:14 UTC | BILL_GETTER_INVALID | USD 1.00 | | Ry L | N/A | Request | MV |
| 2023-07-24 23:50:51 UTC | BILL_GETTER_INVALID | USD 1.00 | wya | Ry L | N/A | Request | MV |
| 2023-07-11 18:55:51 UTC | BILL_GETTER_INVALID | USD 1.00 | when you coming back? | Ry L | N/A | Request | MV |
| 2023-06-24 17:40:06 UTC | PAID_OUT | USD 10.00 | | Ry L | 4223230010746226 | Paying | MV |
| 2023-06-24 17:31:03 UTC | PAID_OUT | USD 50.00 | | Ry L | 4223230010746226 | Paying | MV |
| 2023-06-24 17:30:47 UTC | DECLINED | USD 50.00 | | Ry L | 6011003532563341 | Paying | MV |

14

| 2023-06-24 17:17:31 UTC | PAID_OUT | USD 1.00 | added you-ry_ry9188 | Ry L | 4223230010746226 | Paying | MV |
|---|---|---|---|---|---|---|---|
| 2023-06-24 17:13:05 UTC | PAID_OUT | USD 1.00 | don't see anything | MV | CASH_BALANCE | Paying | Ry L |
| 2023-06-24 17:11:29 UTC | PAID_OUT | USD 5.00 | check snap | Ry L | 6011003532563341 | Paying | MV |
| 2023-06-24 17:10:43 UTC | PAID_OUT | USD 5.00 | ☺ | Ry L | 6011003532563341 | Paying | Angieee Luvv |
| 2023-06-24 16:25:51 UTC | PAID_OUT | USD 25.00 | ☺ | Ry L | 6011003532563341 | Paying | Angieee Luvv |
| 2023-05-17 02:09:07 UTC | PAID_OUT | USD 50.00 | ☺ | Ry L | 4223230010746226 | Paying | Stacia Rosso |

41. As seen above, on June 24, 2023, "Ry L" paid MV $10. It appears he also attempted to send MV $50, which was declined; he then sent MV $1 with a note that he had added her [on Snapchat], and his username was ry_ry9188. This Snapchat account no longer exists. The $1 was returned to Ry L by MV with a note that said she did not see anything. Ry L then sent MV another successful transaction of $5

15

with a note to "check snap." Ry L has payments totaling $80 to other unknown females during this timeframe as well.

42. Pertaining to MV's Cash App account, there is identifying information returned in the data associated with MV's mother and MV, positively linking the account to MV. The email address and phone number linked to MV, and this Cash App account will not be listed to protect MV's identity, as the email address contains her actual name. Payment transactions associated with Ry L were located in MV's Cash App data as well, as outlined below:

| Date | Status | Total | Subject | Sender | Sndr. Source | Action | Recipient |
|------|--------|-------|---------|--------|--------------|--------|-----------|
| 2023-08-16 21:40:14 UTC | BILL_GETTER_INVALID | USD 1.00 | | Ry L | N/A | Request | MV |
| 2023-07-24 23:50:51 UTC | BILL_GETTER_INVALID | USD 1.00 | wya | Ry L | N/A | Request | MV |
| 2023-07-11 18:55:51 UTC | BILL_GETTER_INVALID | USD 1.00 | when you coming back? | Ry L | N/A | Request | MV |
| 2023-06-24 17:40:06 UTC | PAID_OUT | USD 10.00 | | Ry L | 4223230010746226 | Paying | MV |

| 2023-06-24 17:31:03 UTC | PAID_OUT | USD 50.00 | | Ry L | 42232 30010 74622 6 | Paying | MV |
|---|---|---|---|---|---|---|---|
| 2023-06-24 17:30:47 UTC | DECLINED | USD 50.00 | | Ry L | 60110 03532 56334 1 | Paying | MV |
| 2023-06-24 17:17:31 UTC | PAID_OUT | USD 1.00 | added you- ry_ry91 88 | Ry L | 42232 30010 74622 6 | Paying | MV |
| 2023-06-24 17:13:05 UTC | PAID_OUT | USD 1.00 | don't see anythin g | MV | CASH _BAL ANCE | Paying | Ry L |
| 2023-06-24 17:11:29 UTC | PAID_OUT | USD 5.00 | check snap | Ry L | 60110 03532 56334 1 | Paying | MV |
| 2023-02-02 05:08:36 UTC | PAID_OUT | USD 50.00 | | Ryan | 42232 30010 74622 6 | Paying | MV |

43. MV's transaction history with Ry L mirror what was located in Ry L's. The only thing different was that an additional transaction of $50 from "Ryan" to MV was paid out on February 2, 2023. The debit or credit card number linked to "Ryan's" account is the same number that linked to other successful payments to MV from Ry L, indicating that "Ry L," and "Ryan" are the same individual.

17

44. On March 14, 2024, HSI Tulsa electronically served Google with an administrative DHS summons for subscriber information associated with email address "bluebyyou714@gmail.com," which was used as an alias for the $ry91888 Cash App account, for a date range of February 1, 2023, through the present. Google responded to the summons the same day and provided the requested information.

45. The name associated with the email account, as entered by the user, is Thomas Quinn. There were no phone numbers or other email addresses associated with the account. There were, however, IP addresses utilized by the account, with the most recent being 2600:8804:5c02:7800:1925:2ee4:da8:e7e0 on 2024-03-12 03:14:19 Zulu Time (similar to UTC). This IP address shows to be serviced by Cox Communications.

46. In the provided Google billing information, I observed that the same debit or credit card used by "Ry L" to send money to MV is also linked to this Google account. The account holder and billing name listed here is Ryan LLEWELLYN. On the 'Customer Info' text file, LLEWELLYN's name is listed again as a recipient in the 'Postal Address' section; however, his address is not listed. It does list a zip code of 74133, which is the zip code of LLEWELLYN's residence.

47. According to open source www.maxmind.com, IP address 2600:8804:5c02:7800:1925:2ee4:da8:e7e0 geolocates to Tulsa, Oklahoma, and is serviced by Cox Communications. On or about April 8, 2024, HSI Tulsa electronically served Cox Communications with an administrative DHS summons

18

for subscriber information associated with the IP address on March 12, 2024, at

03:14:19 Zulu Time (UTC).

48. On or about April 23, 2024, Cox Communications responded to the summons

and provided the requested information:

> **Subscriber Information:**
> Name: RYAN LLEWELLYN
> Address: APT 1 6306 S 107TH EAST AVE TULSA, OK 74133
> Telephone: 918 313-2747
> Email address/es: ryrylll@yahoo.com
> **Account / Service Information**
> Account Number: 186012412914
> Type of Service: HIGH SPEED DATA SERVICES (ACTIVE)
> Account Start Date: 12/31/2019
> Disconnect Date: N/A

49. As noted above, the registered subscriber of the IP address is Ryan

LLEWELLYN at his residence. The listed phone number for LLEWELLYN as

provided by Cox Communications matches the phone number for "Ry L" as

provided by MV. As described herein, the registered AT&T subscriber of this phone

number is LLEWELLYN. The internet account still shows to be active. The email

address "ryrylll@yahoo.com" was previously unknown to me; however, "ryrylll"

was also listed as an alias used on the target's Cash App account.

50. A check of LLEWELLYN's employment records through the Oklahoma

Employment Security Commission revealed that he worked for GFP Acquisition

Company; Address: 440 S La Salle St Ste 3100, Chicago, IL 60605; Location: 2701

W Concord Street, Broken Arrow, OK 74012; Phone Number: (918) 317-0401. This

company is listed as an HVAC company. Upon querying the Broken Arrow address, I learned that the address is associated with American Wheatley, an HVAC parts manufacturer.

51. On May 14, 2024, at approximately 0800 hours, I observed LLEWELLYN's vehicle parked at American Wheatley in Broken Arrow, OK. On May 15, 2024, at approximately 1700 hours, while conducting surveillance near American Wheatley, I observed LLEWELLYN leaving work. LLEWELLYN stopped at the QuikTrip located at 2400 N Aspen Ave, Broken Arrow, OK, and went inside. I took photographs of LLEWELLYN as he exited the store and entered his vehicle again. I was able to positively identify LLEWELLYN as the driver based on previously viewing his Oklahoma driver's license photograph.

52. I then left the area and traveled to LLEWELLYN's apartment ahead of him. Approximately twenty minutes later, I observed and took photographs of LLEWELLYN arriving back at the apartment. LLEWELLYN parked directly in front of the walkway to Apartment 1, in front of building 6306. LLEWELLYN exited his vehicle and walked towards Apartment 1, where he disappeared from view. Apartment 1 is the only apartment located in the area LLEWELLYN walked to. I then terminated surveillance.

53. On May 23, 2024, in the Northern District of Oklahoma (NDOK), I was granted three (3) search and seizure warrants for: LLEWELLYN's apartment at 6306 South 107th East Avenue, Apartment 1, Tulsa, OK 74133; LLEWELLYN's

20

tan 2012 Kia Sorento with Oklahoma license plate GTJ-086; and the person of
LLEWELLYN. The warrants were authorized by the Honorable Christine D. Little,
U.S. Magistrate Judge.

54. On May 29, 2024, HSI Tulsa and the Tulsa County Sheriff's Office ("TCSO")
served the search warrants. HSI Task Force Officer ("TFO") Andy Titsworth had set
up surveillance at LLEWELLYN's workplace, American Wheatley, in Broken
Arrow, Oklahoma. At approximately 1618 hours, TFO Titsworth observed
LLEWELLYN's vehicle leaving work. TFO Titsworth began following the vehicle
and notified me. TCSO Uniformed Deputy Kimber Take, driving a marked TCSO
unit, went to assist TFO Titsworth. TFO Titsworth followed the vehicle until Deputy
Take arrived in the area. Deputy Take activated her emergency lights and stopped
the vehicle near 3100 South Urbana Avenue, Tulsa, Oklahoma, in the NDOK.

55. Once the vehicle was stopped, LLEWELLYN was briefly placed in handcuffs
while his vehicle was searched by TFO Titsworth. The only item seized from
LLEWELLYN's vehicle was his red Apple iPhone 11, S/N: DX3H3P2MN72L. No
evidence was located on his person. SA Polo Villarreal and I arrived on scene
approximately ten minutes later, at which time I removed LLEWELLYN's
handcuffs.

56. I asked LLEWELLYN to sit in my vehicle so I could explain what was going
on. SA Villarreal also sat in the vehicle while LLEWELLYN was interviewed. The
interview was audio and video recorded.

57. I introduced myself and SA Villarreal to LLEWELLYN and displayed my credentials. I explained what Homeland Security does and some of the things we investigate. I stated that I have an investigation where LLEWELLYN's name came up and was able to obtain search warrants for his apartment, vehicle, and person. LLEWELLYN had no idea why agents would want to speak with him. I informed him that he was not under arrest and that he did not have to talk to agents.

58. LLEWELLYN stated his date of birth was XX/XX/1984 when asked and confirmed the apartment address was his residence. I then showed and provided copies of the search warrants to LLEWELLYN. I showed him Attachment B and the specific crimes that were being investigated. I read LLEWELLYN his *Miranda Rights* from a standard ICE form. LLEWELLYN did not sign the form but agreed to speak with agents without an attorney present.

59. LLEWELLYN stated his phone number was (918) 313-2747, and provided the passcode to his phone as 892527, which did work. I asked about LLEWELLYN's email addresses that he used. LLEWELLYN stated he only uses one: ryryllll@yahoo.com. I asked about bluebyyou714@gmail.com and LLEWELLYN stated, "I do have that email, yes." The following is a summary of statements made by LLEWELLYN during the remainder of the interview:

    i.    He has Cash App and Venmo.

    ii.    He has Facebook, Instagram, and Snapchat.

    iii.    His Snapchat username was "ryry" or "ry" something.

iv. He purchases a lot of stuff from OnlyFans girls, and that he is nervous that he may have purchased from someone who is not of age.

v. He did not recognize the photo of MV that was shown to him.

vi. He has bought from a couple of girls with the same name as MV.

vii. He knows one of them is 18, but cannot recall the age of the other one.

viii. There is a lot of back and forth with fantasy chat and he cannot recall what exactly was said to each one.

ix. Ry_ry9188 is not a Snapchat username that he currently has.

x. He frequently deleted his Snapchat accounts because he wanted to stop spending so much money.

xi. He enjoys giving gifts to the girls, as well as his friends.

xii. Child pornography is under 18 and nude or engaged in a sex act.

xiii. He has never looked at child pornography, except for what he may have accidentally purchased from MV.

xiv. There are some popular underage girls, who are not nude, that he will make comments on.

xv. He believes he may have found MV on Instagram, as that's where he first talks to the girls he purchases from.

xvi. He has never intentionally looked at child pornography.

xvii. Agents will not find any prepubescent child pornography on his phone.

xviii. He has never met up with any of the girls from Snapchat.

xix. He does not recall if he has ever offered to meet up for sex.

xx. He has never solicited prostitution.

xxi. Agents may find clothed minors in his phone that he finds attractive.

xxii. He uses Facebook Messenger.

xxiii. He has maybe used Kik years in the past.

xxiv. He has never used Session or Telegram.

xxv. He uses WhatsApp with one of the girls he purchases from.

xxvi. He purchased from a "Madelinn" that just graduated from Edison High School; she is 18.

23

xxvii.   The girls want to conduct their business on Snapchat.

xxviii.  He talked to some people on Kik before who would be into kids, and he would get out of those chats.

xxix.    He has received unsolicited child pornography on Kik. He would not save those files, he would leave the conversation.

xxx.     He is not a coach or in any position where he has contact with children.

xxxi.    He has never inappropriately touched a minor.

xxxii.   He is a straight-laced guy and buying pictures and videos is the only thing he does.

xxxiii.  He would not have engaged in conversation with someone if he knew they were a minor.

xxxiv.   To his recollection, everything he has said is truthful.

xxxv.    He does not recall why he stopped buying from MV.

xxxvi.   He is not sure if his phone is backed up to the cloud.

xxxvii.  He is "not a tech guy."

xxxviii. Agents will find an old laptop and maybe a phone in his apartment.

xxxix.   No one else uses his phone.

xl.      He has masturbated to the photos he purchased.

xli.     He has never sent them to anyone else.

xlii.    He does not know what should happen to someone who has knowingly purchased child pornography from a minor.

xliii.   He does not have any secret, hidden apps.

60. While manually reviewing LLEWELLYN's iPhone, I observed that he had Snapchat installed on the device. Upon opening the application, I further observed LLEWELLYN's current username is "**Ryry9378**."

61. Although LLEWELLYN's chat conversation with MV is not likely to be associated with this current account, I believe evidence of violations of the offenses

24

cited herein may be found in the account for the following reasons: MV stated her communication with LLEWELLYN occurred over Snapchat, LLEWELLYN uses Snapchat to communicate with the opposite sex to arrange for the purchase of sexually explicit material, LLEWELLYN has an admitted attraction to at least some minors, LLEWELLYN obtains sexual gratification from the material he obtains through Snapchat, and additional minor victims may be identified in his account data.

## Information to be Searched and Things to be Seized

62. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snap, Inc. Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

63. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information

described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

64. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

### Conclusion

65. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of 18 U.S.C. § 2422(b) (Coercion or

Enticement of a Minor), 18 U.S.C. §§ 2251(d)(1)(A) and 2251(e) (Advertising to Purchase and Receive Child Pornography), Title 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt of Child Pornography), and Title 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of Child Pornography) associated with the Snapchat account described in Attachment A.

66. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Dustin L. Carder
Special Agent
Homeland Security Investigations

Sworn and subscribed by telephone this 17th day of June, 2024.

SUSAN E. HUNTSMAN
UNITED STATES MAGISTRATE JUDGE

27

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Snapchat account "Ryry9378," which is stored at the premises owned, maintained, controlled, and/or operated by Snap, Inc., a company headquartered in Santa Monica, California.

## <u>ATTACHMENT B</u>

### <u>Particular Things to be Seized</u>

**I.      Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for each account listed in Attachment A:

A. All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times and locations, connection IP information, message content, graphics files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat account identified in Attachment A;

B. All subscriber information, including Snapchat username vanity names, email addresses, phone numbers, full name, physical address, and other personal identifiers;

C. All information pertaining to the creation of the account, including date and time of creation, IP address used to create the account, and all subscriber information provided at the time the account was created;

D. Timestamp and IP address of all account logins and logouts.

E. Logs of all messages and all files that have been created and Snaps sent or accessed via the Snapchat account identified in Attachment A, or that are controlled by user accounts associated with the Snapchat account;

F. The account name, vanity name, identifiers and all available subscriber information for any other Snapchat account(s) associated with the Snapchat account listed in Attachment A;

G. All content, records, connection logs, and other information relating to communications sent from or received by the Snapchat account identified in Attachment A from January 1, 2023, through May 29, 2024, including but not limited to:

1. Transmitter/Sender identifiers (i.e., addresses and/or IP address);

2. Connection date and time;

3. Method of Connection (telnet, ftp, http);

4. Data transfer volume;

5. Username associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;

2

6.      Account subscriber identification records;

7.      Other user accounts associated with, referenced in, or accessed by the

        Snapchat account identified in Attachment A;

8.      Address books, contact lists and "my friends";

9.      Records of files or system attributes accessed, modified, or added by the

        user;

10.     All records and other evidence relating to the subscriber(s), customer(s),

        account holders(s), or other entity(ies) associated with the Snapchat

        account identified in Attachment A, including, without limitation,

        subscriber names, user names, screen names or other identities,

        addresses, residential addresses, business addresses, and other contact

        information, telephone numbers or other subscriber number or identifier

        number, billing records, information about the message and Snaps and

        all information length of service and the types of services the subscriber

        or customer utilized, and any other identifying information, whether

        such records or other evidence are in electronic or other form. Such

        records and other evidence include, without limitation, correspondence

        and other records of contact by any person or entity about the above-

        referenced account, the content associated with or relating to postings,

        communications and any other activities to or through the Snapchat

3

account listed in Attachment A, whether or such records or other evidence are in electronic or other form;

11. All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat account identified in Attachment A regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken;

12. The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, contraband, and/or fruits of violations of 18 U.S.C. § 2422(b) (Coercion or Enticement of a Minor), 18 U.S.C. §§ 2251(d)(1)(A) and 2251(e) (Advertising to Purchase and Receive Child Pornography), Title 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Receipt of Child Pornography), and Title 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (Possession of Child Pornography), including, for each account or identifier listed on Attachment A:

4

a. Images/videos/gifs of child pornography or child erotica; files containing images/videos/gifs; and data of any type relating to the sexual exploitation of minors or a sexual interest in children, material related to the possession thereof, and data of any type related to any person employing, using, persuading, inducing, enticing, or coercing any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting such visual depiction of such conduct, in any form wherever it may be stored or found;

b. Communications between the Snapchat account identified in Attachment A and others from January 1, 2023, through May 29, 2024, pertaining to the sexual exploitation of children, or a sexual interest in minors;

c. Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat account listed in Attachment A was accessed and used, to determine the chronological and geographical context of the Snapchat account access, use, and events relating to the crime(s) under investigation and to the Snapchat account user;

d. Evidence indicating the Snapchat account owner's state of mind as it relates to the crime(s) under investigation;

e. The identity of the person(s) who created or used the Snapchat account identified in Attachment A, including records that help reveal the whereabouts of such person(s);

5

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium and whether in draft or completed form and whether sent or received;

As used above, the terms "records" and "information" includes all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.